UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM W. HELGEMO,

      Plaintiff,

      v.

INTERNATIONAL UNION OF
OPERATING ENGINEERS LOCAL 324,

      Defendant.

Case No.

Hon.

Tyler E. Osburn (P77829)
SCHENK, BONCHER & RYPMA
Attorneys for Plaintiff
601 Three Mile Road NW
Grand Rapids, MI 49544-1601
(616) 647-8277

## COMPLAINT

NOW COMES Plaintiff William W. Helgemo, by and through his attorneys, Schenk, Boncher & Rypma, and for his Complaint against Defendant, International Union of Operating Engineers Local 324 ("Local 324"), states as follows:

### Nature of Action and Jurisdiction

1.     This is a civil complaint brought under the Employee Retirement Income Security Act of 1974 ("ERISA") § 502, 29 U.S.C. § 1132, and federal common law, regarding breach of the terms of an employee benefit plan and breach of fiduciary duty, for the purpose of compelling Local 324 to provide certain pension benefits in the amounts and at the coverage levels promised and for an accounting, recovery of damages, costs, and attorney fees incurred as a consequence of Local 324's failure to do so.

1

2. This Court has jurisdiction under ERISA §§ 502(e)(1), (f), 29 U.S.C. §§ 1132(e)(1), (f), and 28 U.S.C. § 2201.

3. Venue properly lies in this District under ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2).

## Parties and General Allegations

4. The preceding paragraphs are incorporated herein by reference.

5. Helgemo resides in this judicial district.

6. Helgemo is a participant, within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(7), in a pension fund called "Operating Engineers' Local 324 Pension Plan" ("Plan") by virtue of his employment with Hardman Construction, Inc. ("Hardman").

7. The Plan is an employee benefit plan within the meaning of ERISA § 3(2) and 3(3), 29 U.S.C. § 1002(2) and (3). (Plan, attached as **Exhibit "1"**.[1])

8. Local 324 is a union that is and was at all material times doing business in this District.

9. Local 324 is a fiduciary and administrator, within the meaning of ERISA §§ 3(16), 402(a)(2), 29 U.S.C. §§ 1002(16), 1102(a)(2), with respect to the Plan.

10. Helgemo was employed by Hardman as a Superintendent/Heavy Equipment Operator from approximately September 1987 until he retired on November 1, 2008, and became an eligible participant in the Plan.

11. Hardman describes its industry on its website as follows, in relevant part:

HARDMAN CONSTRUCTION is a leading foundation, geotechnical and bridge contractor serving the Midwest. We specialize in a wide array of foundation piles, augercast piles, micro piles, earth retention systems and marine construction. [Excerpt

---

[1] The copy of the Plan attached to this Complaint is missing pages 42-45, which are not in Helgemo's possession.

from Hardman Website, attached as **Exhibit "2"**.]

12. In 2013, Helgemo's wife took ill and he was forced to look for supplemental income.

13. On September 11, 2013, Helgemo accepted a part-time position with S.S. Badger Lake Michigan Carferry Service ("LMC") as a general laborer earning $11.00 per hour. (LMC Application, attached as **Exhibit "3"**.)

14. In 2015, Helgemo began working for Pere Marquette Shipping Company ("PMSC")—LMC's sister company—as a handyman/delivery driver.

15. On February 7, 2018, Helgemo terminated his employment with PMSC.

16. On or around March 19, 2018, Local 324 sent Helgemo a letter suspending his monthly pension benefits as of April 1, 2018. (3/19/18 Letter, attached as **Exhibit "4"**.)

17. Specifically, Local 324 cited to Article III, Section 3.6 of the Plan as the basis to suspend Helgemo's pension benefits, stating as follows:

> The Fund Office has been notified that you are currently working in the same trade or craft in which you were employed while participating in the Operating Engineers Local 324 Pension Fund within the State of Michigan without notifying the Board of Trustees of such return to Covered Employment in accordance with Article III of the Plan Document. [3/19/18 Letter, **Ex. "4"**.]

18. Article III, Section 3.6 of the Plan was cited by Local 324 in its letter as follows, in relevant part and with emphasis in the original:

   a. A Retired Employee Participant who has begun to receive Normal Retirement Pension benefits shall have his monthly benefit suspended for any period during which he meets all of the following conditions prior to the first (1st) day of April following the calendar year in which he reaches age 70 1/2:

      (1) He becomes actively employed or self-employed for at least forty (40) hours in any calendar month or for at least forty (40) hours in the payroll periods falling within a calendar month. Such hours shall include hours for which the Retired Employee Participant is paid or entitled to payment on account for a period of time for which no duties are performed due to vacation,

3

    holiday, illness, incapacity (including disability), layoff, jury duty, military leave or leave of absence.

  (2) Such employment is in the same industry as the type of business activity engaged in by any Employee who was an Employer at the time the Retired Employee Participant first received monthly benefits (or would have received monthly benefits had he not remained in or returned to an employed status).

  (3) Such employment is in the same trade or craft in which the Retired Employee Participant was employed at any time while participating in the Plan, including any supervisory or managerial activity which is reasonably related to the underlying skills associated with the trade or craft for which the Retired Employee Participant was trained or in which he acquired his work experience, and

  (4) Such employment is within the State of Michigan.

b. A Retired Employee Participant who has begun to receive Normal Retirement Pension benefits and who intends to return to employment as described above must notify the Trustees in advance on a form prescribed and furnished by them of his intent to do so and must again notify the Trustees on a form prescribed and furnished by them when he no longer meets all four (4) of the conditions set forth above so that his monthly benefits may be resumed.  **Should such a Retired Employee Participant who returns to such employment without notifying the Trustees of his intent to do so be found to be or to have been working on a job, the Trustees will presume that he has been re-employed under the four (4) conditions set forth above for the entire period that his employer has been working or worked on that particular job-site and suspend the Retired Employee Participant's monthly benefits for such period.  This presumption shall be rebuttable and the Retired Employee Participant shall have thirty (30) days from the date the notice of suspension is issued to submit evidence to rebut, failing which the presumption shall become irrebuttable.** . . .

e. **In the event a Retired Employee Participant receives monthly benefits to which he is not entitled under the provisions of this Section, the Trustees shall recoup any overpayments from benefits which subsequently become payable to him, or a beneficiary claiming through him, to the extent permitted by applicable federal law or valid regulation.**

  19. Because Helgemo's work with LMC and PMSC was neither in the same industry as his work with Hardman, nor in the same trade or craft in which he was engaged with Hardman—meaning that his work did not meet <u>all</u> of the conditions listed in Section 3.6(a), Helgemo was <u>not</u>

4

obligated to send a letter to Local 324 notifying it of his employment.

20. On April 12, 2018, Helgemo filed a timely appeal with Local 324 regarding the suspension of his benefits and requested reconsideration of their decision to suspend his benefits. (4/12/18 Letter, attached as **Exhibit "5"**.)

21. Helgemo described his "trade or craft" while working at Hardman as follows:

In my 21+ years at Hardman Construction I was involved as a crane operator, ran various pieces of heavy equipment such as piling (augercast and steel piles), backhoe for underground, and just about anything related to foundation, bridge, underground and some road work. [4/12/18 Letter, **Ex. "5"**.]

22. Further, Helgemo went into detail regarding the "trade or craft" that he was performing for LMC and PMSC, which included tasks like cleaning, scraping, painting, sealing, removing toilets, flooring, and other general handyman tasks. (4/12/18 Letter, **Ex. "5"**.)

23. Helgemo also submitted substantial documentation with his letter, including several letters from his coworkers and supervisors at LMC and PMSC regarding the nature of the work performed. The letters were written by the following people on his behalf:

a) Maintenance Supervisor Shawn Eldon, who described the work performed by Helgemo as "miscellaneous maintenance" finishing projects that "were carpentry by nature" (Eldon Letter, attached as **Exhibit "6"**);

b) Operations Manager Roger Beadle, stating that Helgemo did handy man work around the office and helped with many projects for LMC and PMSC, including painting, life boat repair, roof repair, installing new sinks and toilets, and repairing windows (Beadle Letter, attached as **Exhibit "7"**);

c) Deckhand and Heavy Equipment Operator Daniel Meeuweberg, describing again Helgemo's carpentry work for PMSC. Meeuweberg also stated that Helgemo would only

operate the excavator a maximum of six hours per week during winter work. (Meeuweberg Letter, attached as **Exhibit "8"**); and

d)      LMC Vice President and PMSC Chief Operating Officer Chuck Leonard, detailing how he hired Helgemo to perform "miscellaneous labor" as described above and making it clear that Helgemo had turned down a standing offer to be an Operator with PMSC because that would have been too similar to the job he was performing at Hardman when he retired. (Leonard Letter, attached as **Exhibit "9"**).

24.     On May 22, 2018, Local 324 sent a letter to Helgemo approving the reinstatement of his monthly pension and tabling the issue of retroactive reinstatement. (5/22/18 Letter, attached as **Exhibit "10"**.)

25.     Helgemo went back to work for Hardman in August of 2018 due to financial difficulties caused by Local 324's dispute over his pension.

26.     On November 6, 2018, Local 324 sent Helgemo a letter denying his request to reinstate his pension benefits "due to the fact that it was determined by the Trustees that you were employed in a capacity prohibited by the Plan subsequent to the date of your retirement", citing Article III, Section 3.6 of the Plan. (11/6/18 Letter, attached as **Exhibit "11"**.)

27.     Local 324 also included an Acknowledgement of Indebtedness for Retirement Benefits and Payment Agreement with the November 6, 2018 letter, demanding that Helgemo repay $141,796.52 to the Plan in monthly payments of $1,069.73. (Acknowledgement of Indebtedness, attached as **Exhibit "12"**.)

28.     Although Helgemo refused to sign the Acknowledgement of Indebtedness because he never worked in the same trade or craft or in the same industry as Hardman subsequent to his retirement, Local 324 began withholding $1,019.73 from his monthly retirement benefits

beginning on November 1, 2018.

## Count I: Breach of Contract/ERISA

29. The preceding paragraphs are incorporated herein by reference.

30. There currently exists between the parties a real and justiciable controversy concerning the application of the Plan and Helgemo's entitlement to benefits.

31. Local 324 terminated Helgemo's pension benefits based on Article III, Section 3.6 of the Plan.

32. Under the aforementioned Plan section, Helgemo's benefits could be suspended if his post-retirement work met **ALL** of the four conditions listed.

33. One of the conditions that had to have been met was that the new employment be in the "same trade or craft" as Helgemo's previous work with Hardman.

34. As stated above, Helgemo was a heavy equipment operator and foreman with Hardman.

35. By contrast, Helgemo was a general laborer/handyman with LMC and PMSC.

36. Therefore, Helgemo's employment with LMC and PMSC was not in the same trade or craft as his employment with Hardman, and he was not disqualified from receiving pension benefits under Section 3.6 of the Plan.

37. Further, Section 3.6 also required that Helgemo's post-retirement employment be "in the same industry as the type of business activity engaged in by" Hardman in order for Helgemo to be disqualified from receiving benefits.

38. In its own words, Hardman is a "foundation, geotechnical and bridge contractor." In other words, Hardman engages in the heavy-duty construction industry, primarily building bridges and roads.

39. There is absolutely no way for Local 324 to claim with any credibility whatsoever that either LMC or PMSC engage in the same industry as Hardman.

40. Instead, LMC and PMSC are engaged in the shipping industry—as should be obvious by the names of the respective companies.

41. Therefore, Helgemo's employment with LMC and PMSC was <u>not</u> in the same industry as Hardman, and he was not disqualified from receiving pension benefits under Section 3.6 of the Plan.

42. Helgemo has fulfilled all of the terms and conditions under the policy, including cooperation with any and all demands of Local 324.

43. Local 324's refusal to reinstate Helgemo's pension benefits and its monthly withholding of 25% of Helgemo's pension benefits are contrary to its contractual obligations, a direct violation of the Plan's terms, and lacks adequate justification or factual basis.

WHEREFORE, Helgemo requests that this Court grant the following relief:

    **A.** A declaratory judgment pursuant to ERISA and common law §502(a)(1)(B), 29 U.S.C., § 1132(a)(1)(B), and 28 U.S.C. § 2201, declaring that Helgemo does not owe any amount of benefits to Local 324, that he is entitled to benefits in the proper amounts as set forth in the Plan in effect at the time benefits became payable, and that Local 324 has violated the Plan and its fiduciary duties by failing to pay the full amount of these benefits;

    **B.** An order compelling Local 324 to pay Helgemo forthwith the full amount of benefits due to him since suspension of his benefits, including interest and reimbursement of all amounts Helgemo has unnecessarily repaid as a result of the suspension;

    **C.** Reasonable attorney fees and costs, pursuant to ERISA § 502(g)(1), 29 U.S.C. § 1132(g)(1); and

      **D.**      Any other equitable and legal relief that this Court deems just and appropriate.

|  |  |
|---|---|
|  | Respectfully Submitted,<br>SCHENK, BONCHER & RYPMA |
| Dated: August 27, 2019 | By:  /s/ Tyler E. Osburn_____<br>Tyler E. Osburn (P77829)<br>Attorney for Plaintiff |

s:\clients\helgemo, bill\complaint - teo edits.docx