UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| WILLIAM W. HELGEMO,     ) | |
| Plaintiff,     ) | |
| ) | No. 1:19-cv-694 |
| -v-     ) | |
| ) | Honorable Paul L. Maloney |
| OPERATING ENGINEERS LOCAL 324     ) | |
| PENSION FUND and OPERATING ENGINEERS     ) | |
| LOCAL 324 RETIREE BENEFIT FUND,     ) | |
| Defendants.     ) | |
| ) | |

## OPINION

This matter is before the Court on Plaintiff William Helgemo's complaint against Defendants Operating Engineers Local 324 Pension Fund and Operating Engineers Local 324 Retiree Benefit Fund (together, "the Fund"). Plaintiff alleges that the Fund breached the terms of his employee benefit plan and seeks a judgment declaring that the Fund violated that benefit plan by failing to pay him the full amount of his benefits, that he does not owe any benefits to the Fund, and that he is entitled to benefit amounts as set forth in the Pension Plan. For reasons to be explained, this Court will affirm the Fund's decision and deny Plaintiff's requests for relief.

## I.

The following facts are taken from the Amended Complaint (ECF No. 5). Plaintiff William Helgemo had been employed by Hardman Construction as a Superintendent/Heavy Equipment Operator for just over 21 years when he retired in November 2008 (*Id.* at ¶ 10). Upon retirement, Helgemo became an eligible participant in

the Operating Engineers Local 324 Pension Plan and the Operating Engineers Local 324 Retiree Benefit Fund, both of which are employee benefit plans within the meaning of the Employee Retirement Income Security Act of 1974 ("ERISA").[1] (*Id.* at ¶¶ 5, 7.)

Article III, Section 3.6 of the Pension Plan states that a "Retired Employee Participant" who receives retirement pension benefits "shall have his monthly benefit suspended for any period during which he meets all of the following conditions[:]" (1) he becomes actively employed or self-employed for at least 40 hours in any month; (2) he becomes employed in the "same industry as the type of business activity engaged in by any Employee who was an Employer at the time [he] first received monthly benefits;" (3) he becomes employed "in the same trade or craft" in which he was employed at any time while participating in the Plan; and (4) he becomes employed in the state of Michigan (*Id.* at ¶ 18(a)).

In 2013, Helgemo returned to work as a general laborer with S.S. Badger Lake Michigan Carferry Service ("LMC") (*Id.* at ¶ 13). In 2015, he began work for a related company, Pere Marquette Shipping Company ("PMSC"), as a handyman/delivery driver (*Id.* at ¶ 14). At some point, the Fund learned of Helgemo's new employment, and on March 19, 2018, it suspended his monthly pension benefits effective April 1, 2018, citing Article III, Section 3.6 of the pension plan (*Id.* at ¶ 16). On April 12, 2018, Helgemo filed an appeal with the Fund requesting reconsideration of the decision to suspend his benefits (*Id.* at ¶ 20). The Fund reinstated Helgemo's benefits beginning June 1, 2018, pending receipt of written

---

[1] 29 U.S.C. § 1001, *et seq.*

verification that he was no longer working, but set aside the issue of retroactive reinstatement (*Id.* at ¶ 24). That letter requested additional information from Helgemo, including payroll information and "a breakdown of hours worked by each of the detailed job description" (ECF No. 13-10 at PageID.685). Helgemo submitted payroll information but did not submit any documents that provided a breakdown of the number of hours spent working each of the detailed job descriptions.

Despite the ongoing dispute, Helgemo returned to work for Hardman in August 2018 (Amended Complaint at ¶ 25). In November 2018, the Fund denied Helgemo's request to reinstate his benefits, and demanded repayment of the retroactive benefits (*Id.* at ¶ 26). Following that decision, Helgemo filed this complaint.

## II.

Before reaching the merits of this case, the Court must determine what the applicable standard of review is. Plaintiff asserts that the applicable standard of review is *de novo*, while Defendant maintains that the applicable standard of review is arbitrary and capricious. Given the discretionary authority the plan grants the administrator, the correct standard of review is arbitrary and capricious.

The Supreme Court has held that the standard of review for a denial of benefits challenged under 29 U.S.C. § 1132(a)(1)(B) is a *de novo* standard "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). If an ERISA plan gives the plan administrator that discretionary authority, the

Court must "review a decision to deny benefits under an arbitrary and capricious standard of review." *McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 168 (6th Cir. 2003).

Plaintiff argues that an arbitrary and capricious standard cannot apply because of a Michigan administrative regulation that prohibits discretionary clauses in insurance plans.[2] That administrative regulation states that ". . . an insurer shall not issue, advertise, or deliver to any person in this state a policy, contract, rider, indorsement, certificate, or similar contract document that contains a discretionary clause." Mich. Admin. Code R. 500.2202(b). Importantly, this regulation incorporates the definitions used in Michigan's Insurance Code of 1956,[3] which includes the definitions of "insurer" and "insurance contract." According to Michigan's Insurance Code, "insurer means an individual, corporation, association, partnership, reciprocal exchange, inter-insurer, Lloyds organization, fraternal benefit society, or other legal entity, engaged or attempting to engage in the business of making insurance or surety contracts." M.C.L. § 500.106(b). And section 116 of Michigan's Insurance Code defines "insurance contract" as "a contract of insurance, indemnity, suretyship, or annuity issued or proposed or intended for issuance by a person engaged in the business of insurance." M.C.L. § 500.116(d). A self-funded pension plan or retirement benefit plan is not an insurance contract under this definition, nor are pension plans or retirement benefits referred to as a type of insurance anywhere else in Michigan's Insurance Code. Moreover,

---

[2] ERISA "superseded[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan[.]" 29 U.S.C. § 1144(1). However, Congress implemented a savings clause providing that "nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities." 29 U.S.C. § 1144(b)(2)(A). In practice, this means that state laws that might otherwise be preempted by ERISA are saved from federal preemption if they regulate insurance, banking, or securities. Michigan's Insurance Code regulates insurance, so it is saved from federal preemption by ERISA.
[3] M.C.L. § 500.100 *et seq.*

4

the Sixth Circuit has expressly held that these regulations "are directed towards entities engaged in the business of insurance." *American Council of Life Insurers v. Ross*, 558 F.3d 600, 605 (6th Cir. 2009). While Plaintiff cites a list of cases to support his claim that the regulation applies, the cases he cites all deal with insurance—not employee benefits. Michigan's insurance regulation does not apply in this case, so the discretionary clauses in the Plans are valid, and this Court must apply an arbitrary and capricious standard of review.

While "the federal courts do not sit in review of the administrator's decisions only for the purpose of rubber stamping those decisions," *Moon v. Unum Provident Corp.*, 405 F.3d 373, 379 (6th Cir. 2005), the arbitrary and capricious standard of review "is the least demanding form of judicial review of administrative action. When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Davis v. Kentucky Finance Cos. Retirement Plan*, 887 F.2d 689, 693 (6th Cir. 1989) (cleaned up). A decision reviewed according to this standard must be upheld if it is supported by "substantial evidence." *Baker v. United Mine Workers of America Health and Retirement Funds*, 929 F.2d 1140, 1144 (6th Cir. 1991). Courts need only determine whether the administrator's decision was "rational in light of the plan's provisions." *Daniel v. Eaton Corp.*, 839 F.2d 263, 267 (6th Cir. 1988).

### III.

It is undisputed that Helgemo worked more than 40 hours a month and that he was employed within the State of Michigan. The parties dispute only two issues: first, whether Helgemo's post-retirement work was in the same trade or craft as his work with Hardman, and second, whether his post-retirement work was in the same industry as Hardman. Plaintiff

argues that the Fund breached the terms of the employee benefit plan because Helgemo's post-retirement work was not in the same trade or craft as Hardman or the same industry as Hardman.

As discussed above, the Fund's decision will be upheld "if it is the result of a deliberate, principled reasoning process, and is rational in light of the plan's provisions." *Cooper v. Life Ins. Co. of North America*, 486 F.3d 157, 165 (6th Cir. 2007) (cleaned up). "[W]hen it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Davis*, 887 F.2d at 693. Importantly, courts "grant plan administrators who are vested with discretion in determining eligibility for benefits great leeway in interpreting ambiguous terms." *Moos v. Square D Co.*, 72 F.3d 39, 42 (6th Cir. 1995).

Applying the arbitrary and capricious standard of review, this Court finds that there is a reasoned explanation for the Fund's decision to suspend Helgemo's benefits. The Fund reached their decision based on the available evidence and that decision was rational considering the plan's provisions.

Looking first at the Fund's determination that Plaintiff worked in the same trade or craft: the Fund reached this determination by interpreting "trade or craft" to mean "skills . . . learned during a significant period of training or practice, which is applicable in occupations in some industry." 29 C.F.R. § 2530.203-3(c)(2)(ii). Importantly, the arbitrary and capricious standard requires deference to the administrator's interpretation of the plan and any ambiguous terms. *See Moos*, 72 F.3d at 42. Thus, the Court must defer to the Fund's interpretation of "trade or craft."

It is undisputed that Helgemo operated heavy equipment while working for Hardman: he was a crane operator, had experience operating the backhoe, and would operate "just about anything related to foundation, bridge, underground, and some road work." (Helgemo April 12, 2018 Letter, ECF No. 13-3 at PageID.415). And in his reemployment, Helgemo operated similar types of heavy machinery and used the skills he learned as an operating engineer: the Fund cites evidence that Helgemo operated an excavator and front-end loader while employed with LMC (*see, e.g,* Brandon Popps March 16, 2018 letter, ECF No. 13-1 at PageID.325). Even Helgemo's letters of support on appeal support this conclusion: individuals familiar with his work at PMSC and LMC confirmed that Helgemo operated various pieces of heavy machinery, and that he was able to do so thanks to his training from Hardman (*see* Letters of Support, ECF No. 13-4 at PageID.423-28). Thus, the Court finds that the Fund had a reasonable basis to conclude that Helgemo was employed in the same "trade or craft" post-retirement.

To avoid this conclusion, Helgemo urges the Court to read "trade or craft" broadly, to essentially mean "occupation." However, the Court is bound to defer to the Plan's interpretation of its own terms. *Id.* The Court notes that the Plan's interpretation of "trade or craft" is supported by the applicable regulation, 29 C.F.R. § 2530.203-3(c)(2)(ii), and the Department of Labor's definition of an operating engineer, which reads: "Operate one or several types of power construction equipment, such as motor graders, bulldozers, scrapers, compressors, pumps, derricks, shovels, tractors, or front-end loaders to excavate, move, and grade earth, erect structures, or pour concrete or other hard surface pavement. May repair and maintain equipment in addition to other duties." *Summary Report for 47-2073.00 -*

*Operating Engineers and Other Construction Equipment Operators*, O*NET OnLine, Department of Labor, https://www.onetonline.org/link/summary/47-2073.00 (last visited August 20, 2021). Accordingly, the Court rejects Helgemo's argument and accepts the Fund's conclusion that his post retirement employment was in the same "trade or craft" as his pre-retirement employment. This is a reasonable determination.

Turning next to the determination that Helgemo's post-retirement work was in the same industry as the type of business activity engaged in by Hardman (or any Employer who was an Employer at the time the Retired Employee Participant first received monthly benefits), the Court finds that the Fund's determination was not arbitrary and capricious. The Fund interprets "industry" to mean "the business activities engaged in by any employers maintaining the plan," using the applicable Department of Labor regulation. 29 C.F.R. § 2530.203-3(c)(2)(i). The Fund reasons that PMSC, LMC, Hardman, and several other Employers all engage in "marine-related" business activities, and as such, they are within the same industry. Again, it is undisputed that Helgemo's pre-retirement work was the operation of heavy equipment in and around the Great Lakes. The Fund cites the "Scope of Work" section of the Floating Agreement (to which the Pension Fund was and still is a party) to note that the Agreement includes the operation of land equipment when it is operated aboard a barge or vessel engaged in the above work, and it includes miscellaneous "Deck Hand" work (*see* Floating Agreement, ECF No. 13-13 at PageID.902, 911). It is also undisputed that some of Helgemo's post-retirement work was as handyman and miscellaneous repair work performed on LMC and MSP boats: this is reasonably similar to "Deck Hand" work, which is covered under the Floating Agreement.

This Court notes that if it had been the first reviewer, it might not have concluded that Helgemo's post-retirement work with a marine shipping company was in the same industry as marine construction and other plan Employers' industries. But given the highly deferential arbitrary and capricious standard of review, the Court finds that there is substantial evidence to support the Fund's finding, especially considering the recognized deference granted to plan administrators in interpreting ambiguous terms. *See Moos*, 72 F.3d at 42. Accordingly, the Fund's determination that Helgemo was employed in the same "trade or craft" was not arbitrary or capricious.

## IV.

The Court finds that the Fund's decision was not arbitrary or capricious. Accordingly,

**IT IS HEREBY ORDERED** that this Court **AFFIRMS** the Fund's determinations and **DENIES** Plaintiff's request for relief.

**IT IS FURTHER ORDERED** that Plaintiffs' complaint will be **DISMISSED**.

Judgment to follow.

**IT IS SO ORDERED.**

Date: August 20, 2021                                    /s/ Paul L. Maloney
                                                                        Paul L. Maloney
                                                                        United States District Judge